IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

[28] JOSÉ M. COTTO-
VELÁZQUEZ,

Defendant.

CRIM. NO.: 23-238 (SCC)

**OPINION AND ORDER**

Pending before the Court is Defendant José M. Cotto-Velázquez' ("Mr. Cotto-Velázquez") request for this Court to revoke the pretrial detention order issued by a U.S. Magistrate Judge at Docket No. 67 and to order his release pending trial. *See* Docket No. 426. For the reasons set forth below, the request is **DENIED** and so the U.S. Magistrate Judge's detention order is **AFFIRMED.**

I. BACKGROUND

On June 8, 2023, a grand jury returned an Indictment charging Mr. Cotto-Velázquez[1] with conspiracy to possess with intent to distribute controlled substances; possession

---

[1] 39 other individuals are also charged in the Indictment and out of those 39 individuals, to date, 7 have yet to be arrested.

U.S.A. v. Cotto-Velázquez                                                                 Page 2

with intent to distribute heroin, cocaine base, cocaine, and marijuana; and possession of a firearm in furtherance of a drug-trafficking crime. *See* Docket No. 3. Per the allegations in the Indictment, Mr. Cotto-Velázquez was a member of a drug trafficking organization ("DTO") operating out of several housing projects in San Juan, including the Manuel A. Pérez Housing Project ("MAPHP") and the San Isidro Ward in Canóvanas. *Id.*

      A bail hearing was held on June 20, 2023 before Magistrate Judge Marcos E. López. *See* Docket No. 83. During the same, the Government sought pretrial detention and Mr. Cotto-Velázquez requested that conditions of release be crafted.[2] *Id.* The United States Probation Officer recommended detention. *Id.* Ultimately, the Magistrate Judge held that Mr. Cotto-Velázquez had not rebutted the presumption arising under 18 U.S.C. §§ 3142(e)(3)(1)-(2). Docket No. 67, pg. 2. Further, the Magistrate Judge pointed out that while the risk of flight was still present, his order of detention would be based on danger to the community. *See* Docket No. 418, pgs. 9-11.

---

[2] The transcript of the bail hearing can be found at Docket No. 418.

| | |
|---|---|
| U.S.A. v. Cotto-Velázquez | Page 3 |

Having reviewed the travel of this case (as far as the bail mater is concerned), the Court turns to Mr. Cotto-Velázquez request.

## II. *DE NOVO* BAIL HEARING

### a. Standard of Review

This Court's review of the Magistrate Judge's detention order is *de novo. United States v. Tortora,* 922 F.2d 880, 883 n.4 (1st Cir. 1990).

### b. Pretrial Detention

Pretrial detention is permitted under the Bail Reform Act of 1984 if no condition or combination of conditions exist which could reasonably assure the appearance of the defendant and the safety of an individual or the community. *See* 18 U.S.C. § 3142(e). Further, if probable cause is found indicating that the defendant committed one of the offenses listed under 18 U.S.C. § 3142(e)(3), a statutory presumption that pretrial detention is warranted attaches. It also holds that "a grand jury indictment is sufficient to establish probable cause for purposes of triggering the rebuttable presumptions" found under § 3142(e). *See United States v. Vargas,* 804 F.2d 157, 163 (1st Cir. 1986).

In this case, a grand jury returned an Indictment charging Mr. Cotto-Velázquez, *see* Docket No. 3, with offenses that fall under the umbrella of those listed under 18 U.S.C. § 3142(e)(3). So, the statutory presumption in favor of detention applies to this case. But that statutory presumption can be rebutted. To do so, Mr. Cotto-Velázquez is only required to produce "some evidence" showing that conditions exist which can reasonably assure his appearance and the safety of the community. *See United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) (quoting *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985)). However, even if Mr. Cotto-Velázquez satisfies this light burden, the presumption does not just go away, for "[t]he burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight." *Id.* Here, the Government has moved for detention on both risk of flight and dangerousness grounds.

The Court must also consider the 18 U.S.C. § 3142(g) factors that include: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) history and characteristics of the defendant, including past conduct and (4) danger posed to the community if the defendant is

released. 18 U.S.C. § 3142(g); *see also United States v. O'Brien*, 895 F.2d 810, 816 (1st Cir. 1990) (recognizing that "due attention" must be given to all four factors). Furthermore, the Government is tasked with establishing that Mr. Cotto-Velázquez presents a risk of flight by a preponderance of the evidence and is a danger to the community by clear and convincing evidence. *See Hernández-Lara v. Lyons*, 10 F.4th 19, 40 (1st Cir. 2021) (highlighting that "under the Bail Reform Act, where flight risk is a factor, the government need only prove flight risk by a preponderance of the evidence in order to continue detention."); *Tortora*, 922 F.2d at 884 (explaining that the Government must "prove clearly and convincingly that no set of release conditions would reasonably assure the community's safety.").

The Court will first address the § 3142(g) factors and then consider them vis-à-vis the presumption that applies here and whether Mr. Cotto-Velázquez was able to rebut the same.

    **c. Section 3142(g) Factors**

      **i. Nature and Circumstances of the Offense Charged**

Mr. Cotto-Velázquez' sentencing exposure is high. If convicted, Mr. Cotto-Velázquez faces a mandatory minimum

of 10 years for Counts 1 through 5 and 5 years for the § 924(c) charge (Count 6). The maximum sentence for these charges, however, could result in a life sentence.

### ii. Weight of the Evidence

The weight of the evidence is strong. The Government's proffer focused on information provided by two cooperating witnesses. According to one of those witnesses, Mr. Cotto-Velázquez has been a member of the DTO for more than ten years. He reportedly worked as a supplier of marijuana and cocaine since 2015. And in 2020 he reportedly became a runner while continuing to serve as a supplier. The Government also proffered that he was seen by one of the cooperating witnesses while he obtained a kilo of cocaine from an individual in a vehicle. Furthermore, during this time, Mr. Cotto-Velázquez was seen by the cooperating witnesses with a firearm while partaking in drug trafficking activities.

The discovery thus far also supports the proposition that the weight of the evidence is strong. The Government has informed that several drug ledgers containing Mr. Cotto-Velázquez' reported alias, "Candido," were found which included the breakdown of drug sales.  And a cellphone

U.S.A. v. Cotto-Velázquez                                                                 Page 7

extraction revealed a text message between Mr. Cotto-Velázquez and another individual charged in the Indictment who is said to have provided weapons to the DTO. The Government proffers that in that text message, Mr. Cotto-Velázquez requested a .40 caliber pistol with two magazines from that individual.

### iii. History and Characteristics of Mr. Cotto-Velázquez

Mr. Cotto-Velázquez has represented that he is a lifelong resident of Puerto Rico. Although he was issued a passport, he has not reported any international travel.[3] Docket No. 39, pg. 3. Mr. Cotto-Velázquez does not have a history of substance abuse. *Id.* at pg. 4. He has a child with his consensual partner and has three other kids from prior relationships. *Id.* at pg. 3. His consensual partner has offered to serve as his third-party custodian. *Id.* at pg. 5. During the *de novo* bail hearing, she informed that she has a food truck in the MAPHP. And in view of Mr. Cotto-Velázquez' arrest, she found a home outside of the MAPHP, specifically, in the

---

[3] The Pretrial Services Report, however, shows that there are several addresses in the continental United States that match Mr. Cotto-Velázquez' demographic information. *See* Docket No. 39, pgs. 2-3. No explanation was provided regarding this matter.

municipality of Luquillo. That residence is being proffered for bail purposes so that if pretrial release is granted, Mr. Cotto-Velázquez does not have to return to the MAPHP while he awaits trial.

Mr. Cotto-Velázquez has not reported any formal verifiable employment but has represented that for the past 10 years he has taken on a series of construction jobs.[4] In terms of assets, the Pretrial Services Report reflects a monthly income of a little over $1,000.00 and a substantial child support debt. Docket No. 39, pg. 3. Meanwhile, his personal checking account[5] reflected a balance of $30.00. *Id.* During the *de novo* bail hearing, Mr. Cotto-Velázquez represented that the child support debt pertained to one of his sons and that his son waived his right to that money since he was already working. Albeit the child support debt, Mr. Cotto-Velázquez was reportedly making a $500 monthly payment to cover the costs of a 2022 Toyota Tundra. *Id.* at pg. 4. Although that

---

[4] He did report, however, that between 2017 and 2018 he worked for "Tu Hogar Renace." Docket No. 39, pg. 3.

[5] This was the only account reported in the Pretrial Services Report. Docket No. 39, pg. 3.

vehicle was not registered under his name, other vehicles[6] were. *Id.* The criminal history search revealed a 2007 controlled substance charge, but the same was dropped since no probable cause was found during the preliminary hearing. *Id.* at pg. 5.

### iv. Danger Posed to the Community if Mr. Cotto-Velázquez is Released

During both the bail hearing and the *de novo* bail hearing, the Government remained steadfast that considering the weight of the evidence and the nature of the offense, no condition or combination of conditions could reasonably assure the safety of the community. While the Government clarified that it was not representing that the cooperating witnesses had stated that they had seen Mr. Cotto-Velázquez using the firearm for enforcement purposes, just that he possessed the firearm during the purported drug trafficking venture, it underscored that even if Mr. Cotto-Velázquez had

---

[6] According to the Pretrial Services Report, the following three vehicles were registered under Mr. Cotto-Velázquez' name: a 2004 Lincoln Aviator, a 2009 Piaggio BV and a 2014 BMW X1. Docket No. 39, pg. 4. Mr. Cotto-Velázquez, however, argues that a search in the CESCO digital portal shows that only two out of those three vehicles were registered under his name, to wit, the BMW and the Piaggio. Docket No. 426, pg. 8 n. 7.

a license to legally possess firearms, that license was not a blank check to possess firearms while partaking in drug trafficking activities.

### d. Analysis

As previously mentioned, the Government has moved for detention on both risk of flight and dangerousness grounds. As to the former, the Court has pointed out that the sentencing exposure is high and generally that factor would support a determination that Mr. Cotto-Velázquez is a risk of flight. After all, a potentially lengthy prison sentence could incentivize a defendant to flee. However, this point was discussed during the bail hearing before the Magistrate Judge and once again during the *de novo* bail hearing and this Court finds that detention is not warranted due to risk of flight.

Indeed, the record reflects a series of unexplained assets which in tandem with the sentencing exposure could certainly sustain the proposition that Mr. Cotto-Velázquez is a risk of flight. However, he has not reported any international travel and his community ties, per the record and his proffer, are exclusively in Puerto Rico. Moreover, there is no evidence that Mr. Cotto-Velázquez resisted his arrest when he was detained by law enforcement agents.

U.S.A. v. Cotto-Velázquez                                                                 Page 11

Accordingly, not only did Mr. Cotto-Velázquez introduce "some evidence" to rebut the presumption that no condition or combination of conditions will reasonably assure his appearance, but the Court also finds that the Government has not met its burden to prove by a preponderance of the evidence that Mr. Cotto-Velázquez is a risk of flight. Now, on to the dangerousness factor.

As previously discussed, the Government heavily relies on the weight of the evidence and the nature of the offense to support its request for detention based on danger to the community. Undeniably, the record shows that Mr. Cotto-Velázquez had a firearms license, but to the extent that he was reportedly bearing those arms while partaking in drug trafficking related activities, the fact that he had a firearms license at that time does not assist him. Moreover, the Government has proffered that according to the cooperating witnesses, Mr. Cotto-Velázquez has been a member of the DTO for the past ten years, which is a considerable amount of time. Furthermore, the Government has proffered a text message exchange in which Mr. Cotto-Velázquez is procuring weapons from another member of the DTO.

Therefore, while the Court does find that Mr. Cotto-Velázquez introduced "some evidence" to rebut the presumption that no condition or combination of conditions could reasonably ensure the safety of the community by having advanced that he has found a home to relocate away from the MAPHP, as the Government pointed out, the new location is not that far away from an area that was controlled by the DTO. And it still holds that even when the presumption is rebutted, it maintains considerable weight for "the presumption does not disappear, but rather retains evidentiary weight[.]" *United States v. Palmer-Contreras*, 835 F.2d 15, 18 (1st Cir. 1987). Therefore, considering the totality of the § 3142(g) factors and the arguments made by the Government the Court finds that the Government has met its burden as to dangerousness and that no condition or combination of conditions can reasonably ensure the safety of the community.

### III. CONCLUSION

Considering the above, the detention order is **AFFIRMED** and Mr. Cotto-Velázquez shall remain detained pending trial. As a final note: the Court's determination today has no bearing on Mr. Cotto-Velázquez' presumption of

U.S.A. v. Cotto-Velázquez                                                                                      Page 13

innocence. The Bail Reform Act clearly states that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j); *see also United States v. Zhang*, 55 F.4th 141, 144 (2d Cir. 2022) (emphasizing that "[t]he presumption of innocence is a trial right, and a district court does not violate that presumption by considering the strength or weakness of the evidence to determine whether pretrial detention is appropriate.").

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 23rd day of February 2024.

      S/ SILVIA CARREÑO-COLL
UNITED STATES DISTRICT COURT JUDGE